**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| **Plaintiff,** | * | |
| v. | | |
| | * | **Case No.: ELH-19-286** |
| **CHARLTON MORRIS,** | | |
| | * | |
| **Defendant.** | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are the defendant Charlton Morris's Motion for Reconsideration of Denial of Review of Detention Order, ECF No. 435, and supporting memorandum, ECF No. 456, his Motion to Appoint Amicus Curiae to Inspect Chesapeake Detention Facility, ECF No. 457, and his Petition for the Issuance of Subpoenas Pursuant to Rule 17(b) and (c) of the Federal Rules of Criminal Procedure, ECF No. 458. The government filed a response in opposition to Morris's motion for reconsideration, ECF No. 463, a response to his petition for subpoenas, ECF No. 466, and a response to his request for appointment of amicus curiae, ECF No. 467. Morris filed a consolidated reply as to each motion. ECF No. 479. No hearing is necessary. For the reasons stated below, the Motion for Reconsideration of Denial of Review of Detention Order, Motion to Appoint Amicus Curiae to Inspect Chesapeake Detention Facility, and the Petition for the Issuance of Subpoenas are denied.

**Background**

On June 25, 2019, Morris was charged by superseding indictment with conspiracy to distribute more than one kilogram of heroin, more than five kilograms of cocaine, more than 280 grams of crack, and a detectable amount of fentanyl in violation of 21 U.S.C. § 846, and one count

of possession with intent to distribute fentanyl in violation of 21 U.S.C. § 841. The maximum sentence he faces is life imprisonment. He also faces a possible mandatory minimum sentence of ten years. On July 1, 2019, Judge Gallagher presided over a detention hearing and issued an Order of Detention, ECF No. 145. On August 24, 2019, Morris filed a motion for reconsideration of the detention order. ECF No. 287. Judge Hollander held a de novo detention hearing on October 31, 2019 and denied his motion on the record in open court. ECF No. 336. Morris remains detained.

In his second motion for reconsideration of a detention order, Morris, who is detained at the Chesapeake Detention Facility (CDF), argues that "[t]he recent escalation of COVID-19 in the Maryland prison system, along with [Morris's] documented history of asthma, justify reconsideration of release in this matter." Def.'s Mot. for Recons. ¶ 3. He also moves for temporary release pursuant to 18 U.S.C. § 3142(i). *Id.* ¶ 6. In his motion to appoint amicus curiae, he argues that the information that the amicus curiae could obtain from an inspection of CDF "is essential at the upcoming detention hearing," as it

> will enable the Court to evaluate a factor this Court has recognized is currently a necessary component of the Bail Reform Act analysis: Mr. Morris' risk of exposure to the virus due to the circumstances of his confinement and the ability of the detention facility to conduct effective screening, testing, quarantining, and virus-related medical care.

Def.'s Amicus Mot. 1. Similarly, in his petition for subpoenas, he asks the Court to issue "subpoenas for documents, testimony, and an inspection" of CDF to obtain "factual evidence that is necessary and essential for his Motion for Reconsideration of Motion for Review of Detention Order." Def.'s Pet. for Subpoenas 1.

Morris's petition for Rule 17(b) and (c) subpoenas and his request for an appointment of an amicus curiae mirror filings in *United States v. Patterson*, No. TJS-20-1078, in which the defendant sought the same relief that Morris seeks. Morris also attaches to his reply a report prepared by a defense expert in *Patterson*.

**Discussion**

Motion to Appoint Amicus Curiae to Inspect CDF

Morris asks the Court to invoke its inherent powers to appoint "an independent, third party acting at the Court's direction and instruction to conduct an inspection of CDF through document gathering, interviews, and touring the facility" in order to determine whether detainees are afforded "adequate protection from infection and necessary treatment should they become infected." Def.'s Amicus Mot. 7. Morris claims an exhaustive, on-site inspection of CDF is "necessary" to decide his motion for reconsideration of the detention order under Section 3142(f) and his motion for temporary release under Section 3142(i). The Court disagrees.

Judge Sullivan was presented with an identical request and virtually identical arguments in *Patterson*, and he denied the request. Order, ECF No. 34 in *Patterson*, No. TJS-20-1078 (D. Md. May 12, 2020). As Judge Sullivan pointed out, at least two district court judges have appointed amicus curiae during the pandemic to inspect pretrial detention facilities and provide reports of their findings. *See* ECF No. 53 in *Seth v. McDonough*, PX-20-1028 (D. Md. May 1, 2020); *Banks v. Booth*, No. 20-849 (CKK) 2020 WL 1914896, at *2 (D.D.C. April 19, 2020). In both of those cases, the district court judge was presiding over a class action lawsuit filed against a detention facility, and the judges ordered an independent investigator to report on the actual conditions inside the jails to aid them in making factual findings necessary to decide motions for temporary restraining orders in which the plaintiffs sought wide-ranging injunctive relief.

This is not a class action lawsuit. The pending motion is not for a temporary restraining order that would require a detailed report on conditions inside the jail in order to decide whether injunctive relief for all detainees is necessary. This is a federal criminal case in which the sole question before the Court is whether, under the Bail Reform Act, an existing detention order should

be reversed because of the global pandemic. One of the many factors that must be considered in making that individualized decision is the "current COVID-19 situation" at CDF and Morris's medical condition. To evaluate those factors, in this case and at this time, the Court does not need a third-party investigative report on the conditions inside the jail. The Court will rely on the written proffers from counsel and the information provided by the U.S. Marshal about the conditions at CDF, as well as Morris's medical records. The request for the appointment of an amicus curiae is denied.[1]

Rule 17(c) Request for Documents

Morris requests the issuance of a subpoena for ten categories of documents relating to CDF's procedures concerning COVID-19, including preventative measures, sanitation efforts, testing, quarantine, isolation, and medical staffing and care. Def.'s Pet. for Subpoenas 3–5. He also requests documents regarding the facilitation of detainee communications with counsel and a copy of "CDF's current physical layout and the physical designation of inmates to each cell and areas of the facility." *Id.* at 5. In response, the government has submitted 19 exhibits containing the "current policies and procedures that have been implemented by [Department of Public Safety and Correctional Services] DPSCS at CDF to attempt to prevent and control any COVID-19 outbreak." Gov't Resp. to Subpoena Pet.

---

[1] Even if an amicus curiae were necessary in this case, I am not convinced I have the authority to appoint one. Defendant has not cited any authority pertaining to magistrate judges. None of the cases cited by Morris involved a magistrate judge's appointment of an amicus curiae to investigate jail conditions to aid in the determination of a pretrial detention decision. I recognize we are living in unprecedented times and that there may be good reason for the lack of precedent. Nonetheless, to the extent I have the authority to appoint an independent investigator, this far-reaching request is better suited for a civil action involving a challenge to the conditions of a jail than it is for a criminal case in which the narrow question is whether a particular defendant, who has been ordered detained by two judges, should be released pending trial.

The documents that Morris seeks are identical to the documents requested in *Patterson*. In *Patterson*, Judge Sullivan granted in part and denied in part the request for documents and ordered the production of: formal written policies or protocols that state when inmates will be tested for COVID-19 and how they will be monitored for COVID-19 symptoms; the formal written policy or protocol regarding contact tracing for inmates and staff; the formal written policy or protocol that states how visitors to the facility will be screened for COVID-19 symptoms; and the protocols that Corizon Health established for addressing COVID-19 in April 2020 and the Clinical Guidelines that Corizon Health issued for addressing and responding to COVID-19 at CDF. Order, ECF No. 29 in *Patterson*, No. TJS-20-1078 (D. Md. May 7, 2020). These documents were produced by the government and filed with the Court. ECF Nos. 463-1 – 463-19 (sealed). The Court generally agrees with Judge Sullivan's analysis of the Rule 17(c) subpoena request under *United States v. Nixon*, 418 U.S. 683 (1974). Order 13–15, ECF No. 29 in *Patterson*, No. TJS-20-1078. Morris does not challenge Judge Sullivan's ruling with respect to the request for documents. Nor does he identify additional documents that he believes should be produced. Thus, his petition for a Rule 17(c) subpoena will be denied.[2]

Rule 17(b) Request for Testimony

Morris requests a court order requiring the Secretary of the Department of Public Safety and Correctional Services (DPSCS) or his designee to testify about the following topics:

1. CDF's COVID-19 response plan;

2. The conditions within CDF, including the number of residents at CDF, the number of residents who share a cell, the number of double and single cells used, the number of

---

[2] In his petition for a Rule 17(c) subpoena, Morris included a request to inspect CDF, which he argues falls within the rule's allowance for the production of "books, papers, documents, data, or other objects." Morris argues that CDF is a building, which is an "object" that can be produced for inspection. Even if this broad interpretation of Rule 17(c) is accurate, the Court will deny the request for the same reasons the request for appointment of an amicus curiae was denied.

       cells available to be used to quarantine and or isolate residents and the location of those cells, the approximate size of the cells, the size of the common areas where residents spend time out of their cells, the number of hours residents spend outside of their cells each day, the number of telephones available per resident, and the nature of the ventilation system;

3. The current inventory of PPE, COVID-19 tests, and sanitation supplies; and

4. Data regarding the number of COVID-19 tests administered to staff and residents and the results of those tests.

Judge Sullivan denied the same request for testimony in *Patterson* because "many of the topics have no significant bearing on the [release or detention] decision" and "[m]any of the topics listed in the subpoena for testimony . . . are covered in [the] documents." Order 18–20, ECF No. 29 in *Patterson*, No. TJS-20-1078. Morris argues that Judge Sullivan erred by not requiring testimony because the Court must know whether CDF's written procedures and protocols are actually being implemented. Morris says they are not. He claims that CDF is not enforcing social distancing in the inmate tiers, that more than ten inmates are in the same area at any given time in violation of protocol, that staff drink at their posts in violation of protocol, that inmates do not have gloves or hand sanitizer, and that the cleaning supplies have been watered down, rendering them less effective. Def.'s Mem. in Support of Mot. for Recons 6–7.

The Court agrees that protocols and written procedures are effective only to the extent they are followed and enforced, and the Court will accept as true Morris's report of conditions inside the jail. But the Court does not need live testimony on the four topics proposed in the Rule 17(b) subpoena in order to evaluate the current COVID-19 situation at CDF in the context of Morris's second motion to reconsider his detention order. Testimony on three of the four topics identified in the Rule 17(b) petition will not reveal information necessary to decide the pending motion. Topic one – CDF's COVID-19 response plan – is addressed, in large part, in the documents produced by the government. Topic two – information regarding CDF's physical layout, the

number of detainees, and the amount of time detainees spend outside of their cells – is marginally relevant to the current COVID-19 situation at the jail, and testimony on these topics would not materially aid the Court in its analysis. Topic three – the current inventory of PPE, COVID-19 tests, and sanitation supplies – is similarly only marginally relevant to the current COVID-19 situation at the jail, and testimony on these topics would not materially aid the Court in its analysis. Topic four – data regarding the presence of COVID-19 at CDF, including the number of tests administered to staff and detainees since March 1, 2020 and the results of those tests – is relevant to the current COVID-19 situation at CDF. However, the Court does not need testimony on this topic to decide the pending motion. The Court understands that as of May 12, 2020, five staff members had tested positive and that on May 8, 2020, one detainee tested positive upon his arrival to CDF. There have been no reports of further positive results for staff and detainees. For this particular motion, at this particular time, testimony is unnecessary.[3]

Motion for Reconsideration of Detention Order or for Temporary Release

Morris seeks reconsideration of his detention order because he claims the COVID-19 global pandemic is a material change in circumstances that was unknown to him and Judges Gallagher and Hollander at his two prior detention hearings. Morris has not argued that any other factor under the Bail Reform Act has changed. The Court will reconsider the detention order and take into consideration COVID-19, the current situation at CDF, and the fact that Morris has asthma.

---

[3] There is another reason why live testimony is unnecessary. Morris is not entitled to a hearing on this motion, which is his second request for reconsideration of a detention hearing. He has had two prior detention hearings, one before Judge Gallagher and one before Judge Hollander, and the Court does not find that a third hearing is necessary. For that additional reason, I will deny Morris's petition for a Rule 17(b) subpoena.

Under the Bail Reform Act, there is a rebuttable presumption of detention because Morris is charged with a violation of 21 U.S.C. § 846, which carries a statutory maximum of more than 10 years. *See* 18 U.S.C. § 3142(e)(3). The presumption of detention "places 'a limited burden of production—not a burden of persuasion' on the defendant to 'com[e] forward with evidence that he does not pose a danger to the community or a risk of flight.'" *United States v. Khusanov*, 731 F. App'x 19, 21 (2d Cir. 2018) (quoting *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011)); *see United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *United States v. Moss*, 887 F.2d 333, 338 (1st Cir. 1989); *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986); *United States v. Portes,* 786 F.2d 758, 764 (7th Cir. 1985); *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). When the defendant meets his burden of production, it "remains a factor to be considered among those weighed by the district court" but "does not eliminate the presumption favoring detention." *Khusanov*, 731 F. App'x at 21 (quoting *English*, 629 F.3d at 319). The government bears the burden of proving by a preponderance that no condition or combination of conditions will reasonably assure the defendant's appearance and by a clear and convincing showing that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(f); *see Khusanov*, 731 F. App'x at 21 (noting that the "ultimate burden" of proof remains on the government to "mak[e] a preponderance showing that the defendant poses a risk of flight and a clear and convincing showing that he presents a danger to persons or the community").

In determining whether a defendant should be released or detained pending trial, the Bail Reform Act requires that the Court consider the nature and circumstances of the offense charged, the weight of the evidence, the history and characteristics of the person, including criminal history, whether, at the time of the current offense, the person was on probation or parole, and the nature

8

and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

In addition to seeking reconsideration of the detention order, Morris also seeks temporary release under Section 3142(i), which provides:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142(i). Morris is seeking temporary release for a "compelling reason." In an application for temporary release under § 3142(i) due to COVID-19, the Fourth Circuit directed the Court to consider

> the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a 'compelling reason' for temporary release under 18 U.S.C. § 3142(i).

*United States v. Creek*, No. 20-4251 (4th Cir. Apr. 15, 2020), ECF No. 402 in *United States v. Creek*, No. CCB-19-36 (D. Md.). "The defendant bears the burden of demonstrating a compelling reason." *United States v. Creek*, No. CCB-19-36, 2020 WL 2097692, at *3 (D. Md. May 1, 2020). Every court that has considered temporary release under § 3142(i) during the pandemic has "recognized that, in deciding whether temporary release is warranted, the court must still consider the danger to the community or risk of flight that would be posed by the defendant's release as analyzed under the factors set forth in 18 U.S.C. § 3142(g)." *Id.* at *3.

Morris, 24, is a lifelong resident of Baltimore. He has strong family and personal ties to the community. He has daily contact with his mother, sister, and children, all of whom reside in Baltimore. He does not have a passport and has never traveled outside of the United States. He has a high school diploma. He reports no significant employment history. He reports no mental

9

health issues. He has used marijuana daily since he was 16. In the Pretrial Services Report, Morris and his mother reported he was in good physical health. Medical records from CDF indicate that Morris has asthma and was prescribed an albuterol inhaler at certain times in 2019. Med. Recs. 7, 9, ECF No. 440 (sealed).

Morris and 24 co-defendants have been charged with conspiracy to distribute fentanyl, heroin, cocaine, and cocaine base in the Monument Street corridor of East Baltimore. It is alleged that Morris was a "street lieutenant" responsible for distributing large quantities of narcotics in the Monument Street area. The evidence consists of wiretap and physical surveillance and the seizure of narcotics, money, and firearms pursuant to search warrants. Two of Morris's phones were tapped during the investigation, and the wiretaps revealed that Morris was engaged in the distribution of narcotics. On August 23, 2018, Morris allegedly sold an undercover detective nine capsules containing a mixture of tramadol and fentanyl. On September 17, 2018, Morris allegedly was captured on CCTV cameras conducting a hand-to-hand drug transaction and acting as a look-out for a co-defendant who engaged in separate drug deals.

Morris has prior criminal convictions for unauthorized removal of property (in 2014 at age 19); conspiracy to distribute and distribution of narcotics (in 2014 at age 20); and possession with intent to distribute narcotics (in 2018 at age 23). He was found in violation of his probation in January 2019 for committing a new offense, was sentenced to one year of incarceration, and was released to parole in May 2019. He was on probation when he allegedly committed the crimes in this case, and he was on parole when he was arrested for these crimes. As a juvenile, which was not too long ago considering he is only 24 now, Morris was charged in 19 complaints, mostly related to CDS charges.

The danger to the community posed by Morris's release is continued drug-trafficking. This is a serious potential danger. Morris has repeatedly engaged in drug-dealing while on pretrial release or probation or parole for narcotics convictions. He has many juvenile charges for CDS distribution. The alleged crime here is for large-scale CDS distribution.

The Court now turns to consider COVID-19, the conditions at the jail, and Morris's medical condition. As a general matter, the Court believes that reducing the number of pretrial detainees in detention facilities during the pandemic is safer for the communities inside and outside the jails. However, the Court must balance all of the Bail Reform Act factors as applied to Morris, his specific medical condition, and the current situation at CDF to determine whether pretrial release is warranted.

According to CDF medical records, in June 2019, Morris reported to jail medical staff at his initial medical evaluation that he has asthma, and he was prescribed an albuterol inhaler at various times last year. He also reported that he could not remember his last asthma attack. The Centers for Disease Control and Prevention (CDC) advise that "[p]eople with moderate to severe asthma may be at higher risk of getting very sick from COVID-19."[4] Although it is unclear whether Morris's asthma qualifies at moderate to severe, the Court will assume for purposes of this motion that it does. The fact that Morris has asthma weighs in favor of release, but it is only one factor among many that must be considered.

CDF, where Morris has been detained since June 2019, has not reported an outbreak of COVID-19 in the detainee population. Unlike in the D.C. jail, the coronavirus has not taken hold in CDF. As of today, there have been reports of five CDF staff members who tested positive, the

---

[4] *See* Coronavirus Disease 2019 (COVID-19): People with Moderate to Severe Asthma, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html.

11

most recent being a dentist who tested positive on May 12 and was last at work on May 4. This news was quite alarming. Since its announcement, however, there have been no reports that the virus has spread to detainees. Only one detainee has reportedly tested positive, and that occurred on May 8, shortly after he arrived at the facility and was in quarantine. There have been no reports that he spread the virus to other detainees or staff. The Court is very concerned that the virus might enter CDF and spread quickly, but as of today, there is no evidence it has. Morris's observations about the lack of social distancing in the tiers, coupled with the small, confined spaces at CDF, raise concerns about the ability of the jail to handle an outbreak of the virus, but fortunately, that has yet not occurred.

Judges Gallagher and Hollander detained Morris because they found that no condition or combination of conditions could reasonably assure the safety of the community. They based their decisions on the nature of the alleged offense (in particular, distribution of fentanyl), Morris's criminal history, and his prior poor performance on court supervision, including being on supervision at the time of this offense. The COVID-19 global pandemic does not materially change the calculus. Although Morris has asthma, an underlying health condition that the CDC claims could increase his risk of exposure and harm, there is no evidence it is severe or has required hospitalization. Additionally, the current COVID-19 situation at CDF appears stable with no reports of an outbreak.

Even if COVID-19 had significantly changed the Bail Reform Act analysis in Morris's case, there are no conditions of release that would reasonably assure the safety of the community. Assuming his niece and his sister are acceptable third-party custodians and further assuming their residences are in acceptable locations, the Court cannot effectively monitor Morris's whereabouts

with the location monitoring technology currently available.[5] Accordingly, the motion for reconsideration of the detention order is denied.

Morris's request for temporary release under Section 3142(i) is also denied. He has not met his burden of establishing a compelling reason for temporary release. The reasons for the initial detention order remain strong. His documented medical condition is not nearly as severe as, for instance, Mr. Creek's, and the COVID-19 situation at CDF is not comparable to the situation at the D.C. Jail. Although COVID-19 does affect the analysis, the outcome is the same: there are no conditions of release that would reasonably assure the safety of the community.

## **ORDER**

For the reasons stated in this Memorandum Opinion and Order, it is, this 8th day of June, 2020, hereby ORDERED that

1. Charlton Morris's Motion for Reconsideration of Denial of Review of Detention Order, ECF No. 435, IS DENIED;

2. Morris's Motion to Appoint Amicus Curiae to Inspect Chesapeake Detention Facility, ECF No. 457, IS DENIED; and

3. Morris's Petition for the Issuance of Subpoenas Pursuant to Rule 17(b) and (c) of the Federal Rules of Criminal Procedure, ECF No. 458, IS DENIED.

/S/
Deborah L. Boardman
United States Magistrate Judge

---

[5] Morris, through counsel, stated in his memorandum in support of his motion that the contact information and location of the proposed third-party custodians would be provided to Pretrial Services, but as of today, they have not. In any event, my decision does not turn on the availability of a suitable third-party custodian. It also does not turn on the current unavailability of traditional home electronic monitoring.